IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



SAMUEL M. JAMES,

    Plaintiff,

v.                                     Civil Action No. 3:07cv317

SERVICESOURCE, INC.,
et al.,

    Defendants.

## MEMORANDUM OPINION

This action arises from a dispute between Samuel James and his former employer, ServiceSource, Inc. James, proceeding *pro se*, asserted three claims against ServiceSource in the Complaint (Docket No. 1). Count 1, labeled "Constitutional Rights," asserts claims under the Fourth Amendment to United States Constitution,[1] 29 C.F.R. § 1630.6,[2] and Virginia Code § 2.2-3901.[3] Count 2, styled

---

[1] James refers to the clause of the Amendment that states, "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. Cont. amend. IV.

[2] Section 1630.6 makes it an unlawful employment practice for an employer to "participate in a contractual or other relationship that has the effect of subjecting the [employer's] own . . . employee with a disability to . . . discrimination." 29 C.F.R. § 1630.6(a).

[3] Section 2.2-3901 provides, "Conduct that violates any Virginia or federal statute or regulation governing discrimination on the basis of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability shall be an 'unlawful discriminatory practice' . . . ."

"Due Process," maintains that several of ServiceSource's actions ran afoul of the Due Process Clause of the Fourteenth Amendment. Count 3, termed "Disparate Treatment," asserts a claim under 29 C.F.R. § 1630.7,[4] and under Virginia Code § 2.2-3901, which incorporates federal antidiscrimination laws into Virginia law.

James also asserted a count entitled "Bias/Investigative Report," which presented several claims against the United States Department of Labor ("USDL"). Upon a motion by James (Docket No. 32), the claims against the USDL were withdrawn, and USDL was terminated as a party to the action. (Docket No. 33.)

This matter is presently before the Court on two motions filed by James. The first, Motion for Stay (hereinafter "motion to stay") (Mot. for Stay, Docket No. 25), seeks a stay of the proceedings so that James may pursue an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit. For the reasons set forth below, the Court finds that there is no justification for staying the proceedings. Therefore the motion to stay will be denied.

James also filed a Motion for Protective Barring or Sealing Order (hereinafter referred to as "motion to seal") (Rebuttal to Mot. To Dismiss, Submission of Detailed Br., Mot. for Prot. Barring

---

[4] Section 1630.7 states, "It is unlawful for a[n employer] to use standards, criteria, or methods of administration, which are not job related and consistent with business necessity, and; (a) That have the effect of discriminating on the basis of disability . . . ." 29 C.F.R. § 1630.7.

2

or Sealing Order, Docket No. 20) ("Mot. to Seal"). The motion to seal requests that all of James' medical records be sealed. It further asks the Court to order the USDL to return medical records that were allegedly seized improperly and to order an investigation of the seizure. For reasons stated below, the motion to seal is granted in part and denied in part.

## BACKGROUND

ServiceSource is a federal subcontractor that shares responsibility for a food service contract to provide meals for the United States Marine Corps at the Quantico Marine Base in Quantico, Virginia. James was employed by ServiceSource at the Quantico Marine Base from approximately December 2002 until June 2006.

James alleges that, on June 19, 2006, he became engaged in an altercation with a military health inspector in a Quantico dining facility that was partially managed by ServiceSource.[5] On that date, James, who is diabetic, allegedly was preparing a plate of food for himself to offset a dose of insulin he had taken. James was suffering the effects of low blood sugar at the time. A military inspector approached and accosted James for failing to wash his hands while handling food. James maintains that the actions of the military inspector, by preventing him from eating

---

[5]The following description of the facts are based on James' Complaint (Docket No. 1). ServiceSource disputes many of the allegations. (Def. ServiceSource's Answer to Compl., Docket No. 21.)

3

while he was experiencing hypoglycemia, constituted a threat to his life.

Following the disturbance, James was placed on administrative leave. ServiceSource investigated the incident, allegedly without giving James the opportunity to present his version of the events. James' employment was terminated on June 25, 2006, for reason of "negative investigative reports." James' claims flow from the circumstances of his termination.

## DISCUSSION

I. James' Motion to Stay

James characterizes this motion as a motion to stay the proceedings so that he may

> ask the United States Court of Appeals for the Fourth Circuit the following questions:
> (1) Is the Electronic Complaint Filing System, used under the Local Rules of the Eastern District of Virginia, "authorization enough" for the automatic internet publication of party's medical records?
>
> (2) In a case where, the United States government has been named a party with a non-governmental party, should a United States Attorney's motion for dismissal represent the interest of the non-government party?
>
> (3) Should the answer to a complaint that is filed in the Richmond Division Court of the United States Eastern District of Virginia be made timely by an Alexandria Division United States Clerk of the Court's acceptance and transfer of that answer to the United States Clerk of the Court in the Richmond Division?

(Pl.'s Mot. Stay.) (hereinafter referenced as the "first," "second," and "third question").[6]

James cites Fed. R. Civ. P. 62(g) as authority for the stay which he seeks. Rule 62(g), however, pertains to the power of appellate courts to issue stays during pending appeals of final judgments.

This error is not necessarily fatal to James' motion. Reading the motion as a whole, it is apparent that the relief which James seeks is an order under 28 U.S.C. § 1292 certifying an interlocutory appeal to the court of appeals.

## A. The Court's Authority To Certify Interlocutory Appeals

Unless one of several narrow exceptions apply, courts of appeals may only hear appeals from "final decisions" of district courts. 28 U.S.C. § 1291; see also Digital Equipment Corp. v. Desktop Direct, 511 U.S. 863, 868 (1994) ("[T]he general rule [is] that a party is entitled to a single appeal, to be deferred until final judgment has been entered . . . ."). Final decisions are those judgments that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 497 (1989).

---

[6] The Court is mindful of the need to afford due deference to the complaints and motions of pro se litigants. See Gallo v. United States, 499 F. Supp. 2d 697, 699 n.1 (E.D. Va. 2007). Accordingly, James' motion to stay will be construed liberally so that his arguments are given appropriate consideration, no matter how inartfully presented.

Section 1292 catalogs exceptions to § 1291 which allow interlocutory appeals if certain conditions are met. Section 1292(a) lists three exceptions for interlocutory orders: those orders (1) pertaining to injunctions; (2) appointing receivers; or (3) determining rights in admiralty cases. 28 U.S.C. § 1292(a).

Section 1292(b) provides an additional discretionary exception for non-final orders that "involve[] a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This latter exception, although general in scope, affords district courts only "circumscribed authority" to certify matters for interlocutory appeal. Swint v. Chambers County Comm'n, 514 U.S. 35, 46 (1995).

There is also a "practical construction" of § 1291, known as the collateral order doctrine, that functions much like an exception to the final decision rule. Digital Equipment, 511 U.S. at 867. This doctrine permits the immediate appeal of orders that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Will v. Hallock, 546 U.S. 345, 349 (2006) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)). Three elements must be satisfied for a party to avail itself of the collateral matter doctrine; the order

at issue must: "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." Id.

### B. James' Interlocutory Appeals

James asks this Court certify three questions to the court of appeals at a preliminary stage of the action. Because final judgment has not been entered, James' motion must fall within a statutory exception found in § 1292 or satisfy the collateral order doctrine in order to be suitable for an interlocutory appeal. Although each of these avenues of appeal have differing requirements, they share one element in common: the necessity of a disputed court order. See 28 U.S.C. §§ 1292(a)-(b); Will, 546 U.S. at 349.

A court order is a "written direction or command delivered by a court or judge." Blacks Law Dictionary __ (8th ed. 2004). Orders are issued upon a "determination of . . . some subsidiary or collateral matter arising in an action . . . adjudicating a preliminary point or directing some step in the proceedings." Henry Campbell Black, 1 Treatise on the Law of Judgments § 1, at 5 (2d. ed. 1902). It follows that a court's silence or inaction on an issue - especially an issue not raised by motion of a party - cannot be construed as an order.

7

In the absence of a court order affecting the rights of a party to the litigation, no interlocutory appeal may be obtained. In short, there can be no interlocutory appeal without an interlocutory order. To allow otherwise would encourage groundless appeals and piecemeal litigation. With this principle in mind, each of James' questions will be discussed in turn.

### 1. James' First Question For Appeal

The first question James would have this Court certify is whether the "Electronic Complaint Filing System, used under the Local Rules of the Eastern District of Virginia, [is] 'authorization enough' for the automatic internet publication of party's medical records?" (Pl.'s Mot. Stay.) The thrust of this question is that James takes exception to the availability of his medical records on the court's Electronic Case Filing System ("ECF") and Public Access to Court Electronic Records ("PACER").

Under E.D. Va. Local Civ. R. 1, documents must be filed through ECF unless the Electronic Case Filing Policies and Procedures manual ("Manual") directs otherwise. The Manual permits civil litigants to file certain documents by delivering them in person or sending them by mail to the court clerk's office. Manual 38. Documents delivered by these methods are scanned and electronically filed by the staff of the clerk's office. Id. Documents filed in this manner are public records and are accessible through the ECF and PACER systems.

Two methods are available to civil litigants for filing documents under seal so that the documents are not publicly accessible. First, a party may file a motion requesting an order that prospectively seals a document that the party intends to file. E.D. Va. Local Civ. R. 5(C). The party may then deliver the file to the clerk's office in a sealed envelope marked "Under Seal." Manual 16. Alternately, the documents may be delivered to the clerk's office accompanied by a motion to seal. E.D. Va. Local Civ. R. 5(D). Documents filed in the latter manner will be treated as sealed until an order is issued on the motion. Id. Any document filed under seal is not publicly accessible through the ECF or PACER systems.

On September 11, 2007, James filed a document with the Court titled, Rebuttal to Motion to Dismiss, Submission of Detailed Brief, Motion for Protective Order Barring or Sealing Order (previously referred to as "motion to seal") (Docket No. 20). Attached as Exhibit C to this document are 125 pages of James' medical records. (Docket No. 20, Exhibit C). The motion to seal asks the Court to seal James' medical records and otherwise conforms to the requirements of E.D. Va. Local Civ. R. 5(C)-(D). Because these records were filed with an accompanying motion to seal, they should have been placed under seal pending an order on the motion.

9

Because of a clerical error, James' medical records were not sealed and are publicly accessible. By an inadvertent mistake, Exhibit B (Docket No. 20, Exhibit B), a collection of James' employment applications and resumes, was placed under seal.

Reading the first question that James proposes for certification in conjunction with the Motion for Protective Barring or Sealing Order, it is clear that the relief which James seeks is to have his medical records removed from the public domain. Because of the sensitive nature of the records, this request is reasonable. Cf. United States v. Westinghouse Electric Corp., 638 F.2d 570, 577 (2nd Cir. 1980) ("There can be no question that an employee's medical records . . . are well within the ambit of materials entitled to privacy protection."). Furthermore, ServiceSource has not filed a response to the motion to seal and, therefore, is presumed to be unopposed to the motion. Accordingly, James' motion for a sealing order (Docket No. 20) is granted insofar as it asks that his medical records (Docket No. 20, Exhibit C) be sealed.[7]

James' motion to stay is denied to the extent that it asks the Court to certify the first question under § 1292(b). The basis of James' protestation is that his medical records are published on ECF and PACER. This situation was the result of a clerical error,

---

[7] The additional requests in James' motion to seal will be addressed in Part II, *infra*.

not an order of the court. Without a court order, James cannot take advantage of § 1292 or the collateral order doctrine and no interlocutory appeal may be had. Moreover, the records are to be sealed so the asserted basis for the appeal is moot.

### 2. James' Second Question For Appeal

The second question James wishes to have certified for interlocutory appeal is, "In a case where, the United States government has been named a party with a non-governmental party, should a United States Attorney's motion for dismissal represent the interest of the non-government party?" (Pl's Mot. Stay.) This question apparently challenges the propriety of the Defendant Secretary of Labor's Motion to Dismiss and Memorandum in Support Thereof ("Def.'s Mot. Dismiss," Docket No. 10), which was filed by Assistant United States Attorney, Debra Prillaman.

In its Motion to Dismiss, the Department of Labor requested two forms of relief. First, it asked that the Court dismiss the Department of Labor as a party to the action for lack of jurisdiction. (Def.'s Mot. Dismiss 13.) Second, it requested that James' Workforce Incentive Act claim against the Department of Labor in Count 4 of the Complaint be dismissed for failure to state a claim upon which relief may be granted. (Id. at 20.) Each of these forms of relief, and the arguments in support thereof, pertain exclusively to the Department of Labor. Count 4 does not assert a claim against the "non-government party," ServiceSource.

11

Further, dismissing the Department of Labor from the action would have no effect on the James' claims against ServiceSource in Counts 1, 2, and 3. Therefore, the motion filed by Prillaman on behalf of the Department of Labor cannot be characterized as "represent[ing] the interest" of ServiceSource.

Moreover, James failed to bring the objection to the attention this Court by motion, and no order has been issued regarding the matter. Without an identifiable interlocutory order to dispute, James cannot take advantage of § 1292 or the collateral order doctrine. James' Motion for Stay, to the extent that it asks the Court to certify his second question to the court of appeals, is denied.

### 3. James' Third Question for Appeal

Lastly, James asks the Court to certify the following question:

> Should the answer to a complaint that is filed in the Richmond Division Court of the United States Eastern District of Virginia be made timely by an Alexandria Division United States Clerk of the Court's acceptance and transfer of that answer to the United States Clerk of the Court in the Richmond Division?

(Pl.'s Mot. Stay.)

James' Complaint was filed in the Richmond Division of the United States District Court for the Eastern District of Virginia on June 1, 2007. ServiceSource was properly served with the Complaint on August 8, 2007 (Docket No. 11). ServiceSource filed

12

an answer on August 28, 2008 (Docket No. 21), which was within twenty days of service as required by Fed. R. Civ. P. 12(a)(1)(A). The answer was not, however, filed with the Richmond Division, as required by E.D. Va. Local Civil Rule 7(H). Rather, it was filed with the Alexandria Division of the Eastern District of Virginia.

Fed R. Civ. Pro. 12(h) affords parties in James' situation an opportunity to challenge the timeliness of responsive pleadings. The rule provides,

> [I]f no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after service of the pleading upon the party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. Pro. 12(h). As specified by Rule 12(h), a party must file a motion to strike a pleading within twenty days of the service of the challenged pleading.[8]

James improperly challenges the timeliness of ServiceSource's answer by asking this Court to certify the issue for interlocutory appeal. A motion to this Court pursuant to Rule 12(h) would have been the proper method by which to dispute the timelines of the answer. James failed to make such a motion.

---

[8] Striking a portion of a pleading is a "drastic remedy" and courts strongly disfavor exercising their discretion to do so. Waste Mgmt. Holdings, Inc., v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).

13

Affording deference to James as a *pro se* litigant, the Court may construe James' motion to stay as an inartfully argued motion to strike. However, ServiceSource's answer was filed on August 28, 2007. James' motion to stay was not filed until September 19, 2007, twenty-two days after the answer was filed. Thus, even if the Court construed James' motion to stay as a motion to strike, the motion would not have been timely filed under Rule 12(h).

James failed to file a motion with this Court to the address the subject matter of his third question for appeal. It follows that this Court has issued no orders pertaining to the timeliness of ServiceSource's answer. For that additional reason, James' motion to stay, to the extent that it asks the Court to certify the third question is denied.

## II. James' Remaining Claims In The Motion To Seal

In addition to asking the Court to seal his medical records, James makes several other requests in his motion to seal. James objects to the manner in which USDL obtained his medical records and seeks several corresponding forms of relief.

The claims in the motion to seal mirror allegations in the Complaint. In the Complaint, James alleges that the USDL "failed to obtained [sic] authorization for the release of Plaintiff's medical information and [] intentionally falsified information in the record as a means to undermine Plaintiff's efforts for redress." (Compl.) James further alleges that the USDL "does not

have the right to arbitrarily seize Plaintiff's medical information" and that James "is also entitled to a competent investigation and report." (Id.) The USDL's actions, according to James, were in violation of the Fourth Amendment to the United States Constitution.

Echoing the Complaint, the motion to seal urges the Court to order the USDL to return James medical records to him so that the USDL may "request and obtain Plaintiff's medical records properly." (Mot. to Seal.) The purpose of this request is to cure the alleged constitutional violation referenced in the Complaint. The USDL is not, however, a party to this action. James voluntarily withdrew all of the claims in the Complaint against the USDL, (see Mot. to Withdraw Compl.), and USDL was terminated as a party to the action. Given that James' grievances respecting the USDL in the motion to seal are indistinguishable from the withdrawn claims in the Complaint, James' request for an order to compel the USDL to return his medical records is denied as moot.

The last form of relief which James seeks in his motion to seal is a for the Court to "[e]njoin, by referral for prosecution, all parties/persons violating Plaintiff's right to give authorization [for release of his medical records]." (Mot. to Seal.) The Court has no constitutional authority to initiate a criminal prosecution. Therefore, James' motion to seal is denied

15

to the extent that it asks the Court to refer individuals employed by the USDL for criminal prosecution.

## CONCLUSION

For the foregoing reasons, James' Motion for Stay (Docket No. 25) is denied in its entirety; and (2) James' Motion for Protective Barring or Sealing Order (Docket No. 20) is granted in part and denied in part. The Motion for Protective Barring or Sealing Order is granted to the extent that it requests that James' medical records (Docket No. 25, Exhibit C) be sealed. It is denied in all other respects.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff and the counsel of record.

It is so ORDERED.

                                            /s/                  REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 20, 2007