**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| _____ ) | |
| **SAMUEL M. JAMES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL NO. 3:07CV317** |
| ) | |
| **SERVICESOURCE, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on ServiceSource's ("Defendant") motion for summary judgment (docket entry

no. 39), and Plaintiff's motion for joinder of parties (docket entry no. 44.).  The Court will

dispense with oral argument because the facts and legal contentions are adequately presented in

the materials before the Court, and argument would not aid in the decisional process.  For the

reasons discussed below, it is RECOMMENDED that Defendant's motion for summary

judgment be GRANTED, and Plaintiff's motion for joinder be DENIED.

## I. Material Facts and Procedural History

Samuel M. James ("Plaintiff"), a former assistant manager with Defendant, challenges

his discharge from employment.  (James Dep. at 11.)  Plaintiff's Complaint raises claims under

the Americans with Disabilities Act ("ADA"), the Fourth Amendment, and the Due Process

Clause.  (Compl. at 2-6.)

In his original complaint, Plaintiff brought claims against both Defendant and the United States Department of Labor.  (Compl. at 1.)  On October 22, 2007, the Court issued an Order granting Plaintiff's motion to withdraw his claims against the Department of Labor, based on the fact that the Court lacked subject matter jurisdiction over such claims.  (Oct. 22, 2007 Order.)  Pursuant to that Order, the Department of Labor was dismissed from the case without prejudice.  (Id.)  Accordingly, ServiceSource is the only remaining defendant.  On November 30, 2007, Defendant filed a motion for summary judgment.  Plaintiff responded to the motion, and Defendant subsequently filed a reply.

The facts giving rise to this action are as follows.  Defendant is a "not-for-profit corporation whose primary mission is to create opportunities for individuals with disabilities through employment, training, and support services."  (Harold Harris Dep. "Harris Dep." ¶ 2.)  Defendant is a sub-contractor of Sodexho; Sodexho has a contract with the United States Marine Corps ("USMC") to provide food service operations at the base in Quantico, Virginia.  (Harris Dep. ¶ 4.)  Defendant has a contract with Sodexho to provide mess attendants and assistant managers to the Quantico mess halls.  (Id.)  Defendant requires that at least 75 percent of the hours worked at Quantico are worked by people with disabilities.  (Id.)  Plaintiff claims that he is disabled due to spondylolysis and Type II diabetes.  (James Dep. at 24.)

Plaintiff was hired by Defendant on July 7, 2004, for the position of assistant manager.  (Harris Dep. ¶ 6.)  Planitiff had previously worked for Defendant from December 2002 to August 2003.  (Id.)  When Plaintiff was originally hired as assistant manager in December 2002, he signed a Staff Employee Handbook, which included an employee Code of Ethics.  (James Dep. at 10.)  By signing this Code of Ethics, Plaintiff agreed to, *inter alia*, "[d]emonstrate

2

professional work habits." (Def.'s Mem. in Supp. of Mot. for Summ. J. "Def.'s Mem.", Ex. 1.)

The Code of Ethics specifically states:

> These standards apply to all employee interactions including professional
> relationships with subordinate employees, employees with disabilities, parents or
> guardians of employees with disabilities, co-workers, related agencies, and with
> the community at large . . . . Violation of this code will be cause for disciplinary
> action, up to and including termination.

(Id.)

The USMC regularly sends its employees to conduct quality control inspections of the

mess halls, to ensure that Sodexho and Defendant are complying with their contracts. (Harris

Dep. ¶ 5.) Friday, June 16, 2006, was Plaintiff's day off work; however, he went to the mess hall

to try the seafood meal that was being served that day. (James Dep. at 59.) Plaintiff arrived at

the mess hall wearing shorts, sandals, and a pullover shirt. (Id. at 66.) This was not his typical

work attire. (Id. at 67.) Upon entering the building, Plaintiff went to the restroom and took a

dose of insulin. (Id. at 65.) He then talked with fellow employees for ten or fifteen minutes,

before going back into the mess hall to eat. (Id. at 65-66.) Prior to getting his food, Plaintiff

paid the cashier for a colleague's meal and for his own. (Id. at 66.) Plaintiff observed that there

were three or four Marines in line waiting to be served. (Id. at 69-70.) Instead of getting in line

behind the Marines to be served by the mess attendants on duty, Plaintiff proceeded to go behind

the serving line to prepare his own meal. (Id. at 70.)

Plaintiff was approached by a USMC inspector, Sergeant Tucker, who stated that she had

not seen Plaintiff wash his hands prior to handling the food. (James Dep. at 72.) Plaintiff then

went to the restroom, washed his hands, put on gloves and a hair net, and then returned to

serving himself behind the line. (Id.) At this point, Sergeant Tucker informed Plaintiff that she

was conducting an inspection, and asked Plaintiff to remove himself from behind the line.  (Id.)

Plaintiff responded by using vulgar language to explain that he was not in the military, and

proceeded to finish preparing his meal.  (Id. at 74.)  Plaintiff then went to the office to eat his

food.  (Id.)  After eating only a portion of his food, seven or eight minutes later Plaintiff "went

back to Sergeant Tucker and wanted to find out why she would engage [him] rather than one of

the other managers that was on duty."  (Id. at 75.)  At this time, he was "very, very, upset."  (Id.)

At this point, an altercation ensued in which Plaintiff shouted at Sergeant Tucker:

> What's wrong with you?  What's the problem?  If there's something I'm doing
> wrong, write it up.  Why do you not want me to get the food?  You know that I'm
> diabetic.  How do you say you're conducting an inspection.  What have you
> inspected?  If you're here to do an inspection, do the damn thing right or leave.

(Id. at 76.)  Words continued to be exchanged between Plaintiff and Sergeant Tucker, and

although Plaintiff denies that he was yelling, he admits that he was "very forceful."  (Id. at 78.)

Plaintiff had previously admitted, however, that the "altercation involved shouting and use of

obscenities between Sergeant Tucker and [Plaintiff]."  (Id. at 179.)

On Monday, June 19, 2006, Plaintiff's supervisor, Harold Harris ("Harris"), learned of

the incident between Plaintiff and Sergeant Tucker.  (Harris Dep. ¶ 7.)  After speaking with

Plaintiff, Harris informed Plaintiff that effective June 20, 2006, he was suspended pending an

investigation of the altercation. (Id.)  After conducting a thorough investigation of the matter,

Harris terminated Plaintiff's employment effective June 23, 2006, based on his conclusion that

Plaintiff "had engaged in inappropriate and unprofessional conduct in his actions and statements

towards Sgt. Tucker," in violation of Defendant's Code of Ethics.  (Id. ¶ 14.)

## II.  Plaintiff's Motion for Joinder

### 1.     Plaintiff's Arguments in Support of his Motion for Joinder

On December 12, 2007, Plaintiff filed a "Motion for Malpractice Joinder," in which he

requests that the Court allow him to join the United States Department of Veterans Affairs

("USDVA") as a defendant in this action.  (Pl.'s Mot. for Joinder at 1.)  The Secretary of

Veterans Affairs filed a memorandum in opposition to Plaintiff's motion for joinder, in which it

contends that joinder is inappropriate in this case because to allow joinder would substantially

alter the character and scope of the case currently before the Court.  (Sec'y of Veterans Affairs'

Mem. in Opp'n to Mot. for Joinder "Sec'y's Mem." at 2.)

Plaintiff claims that he has discovered errors in medical records that will impact his suit

against Defendant.  (Pl.'s Mot. for Joinder at 2.)  Plaintiff contends that the USDVA is liable for,

*inter alia*, medical malpractice; Plaintiff further argues that this Court has jurisdiction over such

claims pursuant to 38 U.S.C. § 1975.  (Id. at 1.)  Accordingly, Plaintiff claims that joinder is

proper pursuant to Rule 18 of the Federal Rules of Civil Procedure.  (Id.)

Plaintiff introduces several potential claims against the USDVA in his motion for joinder.

First, Plaintiff argues that the USDVA committed medical malpractice by the USDVA in the

improper treatment, from October 2006 to February 2007, of a possible infection in Plaintiff's

left eye.  (Id. at 2-3.)  Secondly, Plaintiff alleges that the USDVA improperly reduced his

disability rating from 60% to 40%.  (Id. at 4.)  Plaintiff claims that this reduction was based on

falsified information, and resulted in deductions from his monthly disability award.  (Id. at 3-4.)

Finally, Plaintiff claims that he is the victim of a "scheme" perpetrated on him by the USDVA in

which the USDVA deducted various amounts in the form of "co-payment[s]" and

"administrative offset[s]" from his monthly disability award.  (Id. at 5.)  Plaintiff claims that he

is being subjected to these co-payments because of the erroneous reduction in his disability

rating.  (Id.)

**2.      Analysis**

Plaintiff's contention that the USDVA should be joined under Federal Rule of Civil

Procedure ("FRCP") 18 is erroneous.  As the USDVA points out in its memorandum in

opposition to Plaintiff's motion for joinder, FRCP 18 governs joinder of *claims*.  Fed. R. Civ. P.

18; (Sec'y's Mem. at 3.)  Plaintiff intended to invoke FRCP 20, which governs the joinder of

*parties*.  Fed. R. Civ. P. 20.  Under FRCP 20, the Court must consider two factors in determining

whether permissive joinder is proper: 1) whether the claims arise out of the same transaction or

series of transactions, and 2) whether there is a common issue of law or fact between the parties.

Fed. R. Civ. P. 20(a).

Joinder should be denied when there is no right or relief arising out of the same

transaction and when there is no question of law or fact common to both defendants.  See

Moseley v. Gen. Motors Corp., 497 F.2d 1330, 1334 (8th Cir. 1974).  Plaintiff's original claims

against Defendant ServiceSource are in relation to allegedly discriminatory employment actions

taken by ServiceSource.  Plaintiff's potential claims against the USDVA are for medical

malpractice and falsification of records.  The only connection between the two claims and the

two parties is the fact that ServiceSource provided Plaintiff's health insurance.  Plaintiff

contends that ServiceSource discontinued his COBRA coverage, and as a result he was given

substandard medical care at a USDVA facility.  (Pl.'s Mot. for Joinder at 3.)  This connection is

tangential and does not meet the "arising out of" standard set forth in FRCP 20(a).  The fact that

ServiceSource at one time provided Plaintiff's health insurance, and that Plaintiff received care

at USDVA facilities under this coverage, does not now mean that Plaintiff's medical malpractice

claims against the USDVA arise out of the same transaction as his disability discrimination

claims against ServiceSource.  Plaintiff's claims against the USDVA and ServiceSource arise

from two different controversies and are supported by two different sets of facts.  Joining the

USDVA to Plaintiff's lawsuit against ServiceSource would not be proper.  Accordingly, this

Court RECOMMENDS that Plaintiff's motion for joinder be DENIED.

### III. <u>Summary of Plaintiff's Complaint and Defendant's Motion for Summary Judgment</u>

### 1.     **Plaintiff's Claims**

Plaintiff claims that he was discharged in violation of the ADA.  He also contends that

his termination was in violation of the Fourth Amendment, because the termination occurred

based on Sergeant Tucker's violation of his right to be secure in his person.  (Compl. at 3-4.)  In

Plaintiff's Count 2, he claims that Defendant violated his due process rights when Plaintiff was

terminated without reasonable notice, told to sign a bonus form without receiving a copy, not

provided with information on the continuation of health care coverage, and suffered because

Defendant provided incorrrect earnings to the Virginia Employment Commission for purposes of

unemployment benefits calculation.  (<u>Id.</u> at 5.)  Plaintiff's Count 3 alleges that Defendant applied

its disciplinary procedure in a biased manner by retaining the employ of another manager who

was charged with criminal embezzlement, but terminating Plaintiff's employment based on his

altercation with Sergeant Tucker.  (<u>Id.</u> at 6.)  Plaintiff's final claim, Count Four, is against the

United States Department of Labor, which has been dismissed from the case.  (<u>Id.</u> at 7.)

Plaintiff requests monetary relief in the form of $50,000,000.00, attorney's fees and costs, and expert witness fees and costs.  (Id. at 8.)  Plaintiff also wishes the Court to "[i]mmediately order Defendant, to desist from constructing employment contracts with employees on the basis of the At-Will Doctrine and/or to discontinue receiving federal funds as a non-exempt federal sub-contractor and pay back any funds collected on this basis."  (Id.) Plaintiff's final request is that the Court "[p]ermanently enjoin Defendant from using an employment contract with employees that allows an "in house disability program" to discriminate against qualified persons with disabilities by evading responsibility of Section 503 of the Rehabilitation Act, by that contract."  (Id.)

## 2.    Defendant's Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment on all claims because there are no genuine issues as to any material facts.  (Def.'s Mot. for Summ. J. at 1.)  Defendant argues that Plaintiff's ADA claim fails as a matter of law because: Plaintiff has failed to present affirmative evidence that raises a reasonable inference of unlawful discrimination; Defendant discharged Plaintiff for a legitimate, nondiscriminatory reason; and, Plaintiff is not disabled under the ADA because he is not substantially limited in any major life activity.  (Def.'s Mem. at 2.)  Defendant contends that Plaintiff's Fourth Amendment claim is baseless because such a claim cannot be brought against a private entity; that Plaintiff's due process claim is without merit because Plaintiff has no property interest in his employment; and, that Plaintiff's remaining claim should be dismissed because it is against an entity that is no longer a party to the case.  (Id. at 27-30.)

#### IV. <u>Standard of Review</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits,

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering whether to grant a motion

for summary judgment, the court must assess the evidence offered by both parties and

"determine whether there is a genuine issue for trial" after viewing the evidence in the light most

favorable to the non-moving party and resolving all factual disputes in that party's favor.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Rossignol v. Voorhaar</u>, 316 F.3d

516, 523 (4th Cir. 2003) (citation omitted). Nonetheless, this Court is not to make credibility

determinations, as that task is for the fact finder. <u>Anderson</u>, 477 U.S. at 255.

To defeat a summary judgment motion, the non-moving party may not rest upon mere

allegations or denials, but must "set forth specific facts showing that there is a genuine issue for

trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (citing former Fed. R. Civ. P. 56(e)).

In essence, the Court must decide if the evidence, when viewed in the light most favorable to the

non-moving party, "presents a sufficient disagreement to require submission to the [factfinder] or

whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at

251-52.

#### V. <u>Analysis</u>

As with most cases, there is no direct evidence here of discriminatory animus toward

Plaintiff; he therefore must rely on the burden-shifting analysis of the <u>McDonnell Douglas</u> test in

order to establish his claims of unlawful discrimination. <u>McDonnell Douglas Corp. v. Green</u>,

411 U.S. 792 (1973); see also Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

Under the McDonnell Douglas test, a plaintiff must first make a *prima facie* showing of unlawful

discrimination by establishing that: (1) he is a member of a protected class; (2) he suffered an

adverse employment action; (3) he was performing at a level that met the employer's reasonble

expectations at the time the adverse action took place; and (4) the adverse employment action

occurred under circumstances that give rise to an inference of unlawful discrimination.

McDonnell Douglas Corp., 411 U.S. at 802.  Only if the plaintiff is able to satisfy his *prima facie*

burden does the burden of production shift to the defendant to establish a legitimate, non-

discriminatory explanation for the adverse action.  If the defendant is able to do so, the burden

shifts back to the plaintiff to demonstrate that the articulated legitimate, non-discriminatory

reason given is pretextual.  Id.; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133 (2000); Tex. Dep't of Cmty. Affairs, 450 U.S. at 253.

In Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., the Court of Appeals for the Fourth

Circuit explicitly extended the McDonnell Douglas burden-shifting framework to cases that arise

under the Americans with Disabilities Act ("ADA").  53 F.3d 55, 58 (4th Cir. 1995).  In Ennis,

the Fourth Circuit further refined the McDonnell Douglas framework to more fully

accommodate cases that fall under the ADA, by more precisely specifying the elements of the

*prima facie* case.  Id.  Specifically, the Fourth Circuit held that:

> [I]n a typical discharge case brought under the ADA, a plaintiff must prove by a
> preponderance of the evidence that (1) she was in the protected class; (2) she was
> discharged; (3) at the time of the discharge, she was performing her job at a level
> that met her employer's legitimate expectations; and (4) her discharge occurred
> under circumstances that raise a reasonable inference of unlawful discrimination.

Ennis, 53 F.3d at 58 (citing Tex. Dep't of Cmty. Affairs, 450 U.S. at 253; Crawford v. Runyon,

37 F.3d 1338, 1341 (8th Cir. 1994); Smith v. Barton, 914 F.2d 1330, 1340 (9th Cir. 1990)).  The

Ennis Court explained that the McDonnell Douglas framework "is merely a means to fine-tune

the presentation of proof and, more importantly, to sharpen the focus on the ultimate question-

whether the plaintiff successfully demonstrated that the defendant intentionally discriminated

against her." Ennis, 53 F.3d at 59 (citations omitted).

**1.      Plaintiff fails to establish a *prima facie* case of discrimination under the ADA.**

It is unnecessary for the Court to address the first three elements of the ADA *prima facie*

case, because Plaintiff fails to demonstrate the fourth element - that his discharge occurred under

circumstances that raise a reasonable inference of unlawful discrimination.  Plaintiff was

discharged because he got into a heated altercation with Sergeant Tucker, the USMC inspector.

Plaintiff's supervisor, Harris, deemed Plaintiff's actions and statements to be inappropriate and

unprofessional.  (Harris Dep. ¶ 14.)  Under the ServiceSource Code of Ethics, which Plaintiff

signed, Defendant reserved the right to terminate Plaintiff's employment if he failed to "[e]nsure

that all relationships with program participations remain professional . . . in nature."  (Def.'s

Mem., Ex. 1.)

The only factual evidence that Plaintiff offers in support of his claim that he was fired on

the basis of his disability (specifically, his diabetes), is his conclusory statement that the reason

he acted unprofessionally towards Sergeant Tucker was because she knew he was diabetic and

she was trying to interfere with him obtaining food to counteract the insulin dose he had

previously taken.  (James Dep. at 75, 135.)  Plaintiff contends that Sergeant Tucker threatened

his life by trying to keep him from eating.  (Id. at 165.)  Plaintiff admitted in his deposition,

however, that neither Sergeant Tucker, or any employee of Defendant, ever told him that he was not permitted to go through the line and be served by a mess attendant. (Id.) Plaintiff also testified that there were only three or four Marines in line to get food. (Id. at 69-70.) Despite the availability of other means by which to obtain food from the mess hall line, Plaintiff instead chose to engage in a verbal altercation with Sergeant Tucker. Plaintiff admits that he was terminated by ServiceSource based on the altercation with Sergeant Tucker. (Id. at 115-16.) Plaintiff states, "[i]t's not that I believe ServiceSource terminated me because I have diabetes or disability, I think they terminated me improperly because of my diabetic condition or circumstances surrounding that condition." (Id. at 116-17.)

Although Plaintiff does not believe that he should have been fired for his conduct, he admits that he engaged in an altercation with Sergeant Tucker. (James Dep. at 116.) He claims that but for his diabetic condition, this altercation would not have occurred, and consequently, he would not have been terminated by Defendant. (Id. at 118.) The Court of Appeals for the Fourth Circuit has consistently held that "an employer is free to discharge a disabled person for misconduct, even if the misconduct was related to his disability." Shiflett v. GE Fanuc Automation Corp., No. 97-1687, 1998 WL 386116, at *6 (4th Cir. June 19, 1998) (citing Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 n.3 (4th Cir. 1997); see Little v. F.B.I., 1 F.3d 255 (4th Cir. 1993)); see also Buie v. BF Goodrich Textile Chems., Inc., 60 F. Supp. 2d 522 (W.D.N.C. 1999) (holding that where employee allegedly fell asleep on the job as a result of his diabetes medication, and was terminated as a result of such misconduct, that such "misconduct could be punished by discharge, regardless of whether the conduct was a result of a disability") (citations omitted). Accordingly, even if Plaintiff's diabetes did, in fact, lead to the altercation

between Plaintiff and Sergeant Tucker, Defendant's discharge of Plaintiff based on such

misconduct (the verbal dispute) was proper. Given these facts, no reasonable trier of fact could

conclude that Plaintiff's termination raised a reasonable inference of unlawful discrimination.

**2.      It is unnecessary for this Court to determine whether diabetes is a "disability" under the ADA.**

Defendant contends that Plaintiff is not "disabled" under the ADA, because he cannot

demonstrate that his diabetes "substantially limits" him in one or more major life activities.

(Def.'s Mem. at 18-19.) Defendant quotes dicta from the United States Supreme Court, which

states that it is against "the letter and spirit of the ADA" to find that a "diabetic whose illness

does not impair his or her daily activities" is disabled "simply because he or she has diabetes."

Sutton v. United Air Lines, Inc., 527 U.S. 471, 483-84 (1999); (Def.'s Mem. at 19.) Defendant

then goes on to cite a number of unpublished opinions from other circuits, in which courts have

come to the conclusion that diabetics are not *per se* disabled under the ADA. (Def.'s Mem. at

20.)

The ADA defines a "disability" as "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (B) a record of

such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.

§ 12102(2). The Supreme Court has held that the ADA's "substantially limits" requirement

means that an impairment must interfere with a major life activity "'considerabl[y]' or 'to a large

degree'" and that "[t]he impairment's impact must also be permanent or long-term." Toyota

Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196, 198 (2002) (citing 29 C.F.R.

§§ 1630.2(j)(2)(ii)-(iii) (2001)).

This Court has already determined that Plaintiff failed to make out a *prima facie* case of discriminatory discharge under the ADA, because he failed to prove that his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination; therefore, it is unnecessary for the Court to determine whether Plaintiff's diabetic condition substantially limits Plaintiff in one or more of his major life activities.  It is likewise unnecessary for the Court to determine whether diabetes constitutes a "disability" under the ADA.

3.     **Even if Plaintiff was able to establish a *prima facie* case, he offers no proof that Defendant's legitimate, nondiscriminatory reason for his termination was pretextual**

If Plaintiff was able to establish a *prima facie* case of discrimination under the ADA, the burden would have shifted to Defendant to articulate a legitimate, non-discriminatory reason for terminating Plaintiff.  Tex. Dep't of Cmty. Affairs, 450 U.S. at 254.  Defendant clearly articulates a legitimate, non-discriminatory reason for Plaintiff's discharge - specifically, Plaintiff's unprofessional conduct towards USMC inspector Sergeant Tucker.

The evidence supports the fact that this was the reason Plaintiff was terminated.  On Monday, June 19, 2006, Plaintiff's supervisor, Harris, learned of the incident between Plaintiff and Sergeant Tucker.  (Harris Dep. ¶ 7.)  Harris spoke with Plaintiff regarding the incident, and informed Plaintiff that he was suspended effective the following day, pending an investigation. (Id.)  Harris extensively investigated the incident: he spoke with several mess hall employees who were present during the incident; he obtained a written statement from Michelle Ebron, who witnessed the altercation; he also received a statement from Sergeant Tucker, stating that the incident began when she was conducting her inspection, noticed Plaintiff behind the serving line wearing a t-shirt, shorts, and sandals, and informed him that he needed to get out from behind the

14

line; at this time, Plaintiff began a rant of vulgar and unprofessional language toward Sergeant

Tucker; Harris also contacted Alan Derosier, ServiceSource's Division Manager for Food

Services, and Sergent William Lindsey, the USMC's Contracting OFficer Technical

Representative - both individuals recommended that Plaintiff be discharged for misconduct.  (Id.

at ¶ 11-12.)  "After concluding the investigation on or about June 22, 2006, [Harris] determined

that [Plaintiff] had engaged in inappropriate and unprofessional conduct in his actions and

statements towards Sgt. Tucker," in violation of ServiceSource's Code of Ethics.  (Id. at ¶ 14.)

Plaintiff was therefore discharged effective June 23, 2006.  (Id.)

Once Defendant has met its burden to articulate a legitimate, non-discriminatory reason

for terminating Plaintiff, Plaintiff can offer evidence that the proffered reason is, in fact, a pretext

for actual discriminatory motive.  Reeves, 530 U.S. at 147.  Plaintiff offers absolutely no

evidence that demonstrates that Defendant's proffered legitimate, non-discriminatory reason for

firing Plaintiff was pretextual.  In fact, Plaintiff admits that he was terminated by ServiceSource

based on the altercation with Sergeant Tucker.  (Id. at 115-16.)  Accordingly, even if Plaintiff

met his burden of proving a *prima facie* case of discriminatory discharge under the ADA (which

he failed to do), his ADA claim would still be meritless because he fails to offer any evidence of

pretext.

Plaintiff's only argument that purports to demonstrate pretext is his contention that

Defendant "applies its disciplinary procedure in a bias manner toward Plaintiff.  In comparison

to Plaintiff's termination, Defendant retained the employ of another [non-disabled] manager,

who was, charged and indicted for criminal embezzlement."  (Compl. at 6, Count 3.)  Plaintiff is

15

factually mistaken.  According to Harold Harris, the series of events to which Plaintiff is

referring occurred as follows:

> Judy Davis was a non-disabled Assistant Manager for ServiceSource working at
> Quantico.  In early 2007, ServiceSource learned that Ms. Davis had been indicted
> for embezzlement.  Ms. Davis' charge stemmed from activities that occurred
> outside her employment with ServiceSource.  ServiceSource withheld discipline
> for Ms. Davis until the courts could determine whether a crime had actually been
> committed.  In approximately October 2007, ServiceSource learned that Ms.
> Davis had been convicted.  On October 17, 2007, Sodexho formally requested
> that Ms. Davis be removed from all Sodexho workshites.  Effective October 17,
> 2007, Ms. Davis was discharged from ServiceSource.

(Harris Dep. ¶ 17.)  Plaintiff therefore fails to demonstrate that he was treated differently from

any similarly-situated employee.

In summary, since Plaintiff does not and cannot demonstrate that his discharge occurred

under circumstances that raise a reasonable inference of unlawful discrimination, Plaintiff fails

to establish a *prima facie* case of discrimination under the ADA.  Even if Plaintiff was able to

establish a *prima facie* case of discriminatory discharge, he fails to provide evidence that

Defendant's legitimate, non-discriminatory reason for his discharge was pretextual.

Accordingly, for the above-stated reasons, it is RECOMMENDED that Plaintiff's ADA claim be

DISMISSED.

## VI.  Plaintiff's Remaining Claims

**1.      Plaintiff's Fourth Amendment Claim**

Plaintiff contends that his Fourth Amendment rights were violated when Sergeant Tucker

"threaten[ed] Plaintiff's life," and Defendant fired Plaintiff as a result of such "threat" between

Plaintiff and Sergeant Tucker.  (Compl. at 3-4, Count 1.)  Plaintiff appears to be raising a Bivens

claim.  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388

(1999).  In <u>Bivens</u>, the Supreme Court recognized an implied private action for damages against *federal officers* alleged to have violated a citizen's constitutional rights.  <u>Id.</u>  Therefore, in order to state a viable <u>Bivens</u> claim, Plaintiff must set forth a statement that indicates a federal official violated a specific constitutional right.

Plaintiff's action is against Defendant ServiceSource, which is a private contractor.  The Supreme Court has made it clear that "[t]he purpose of <u>Bivens</u> is to deter *individual federal officers* from committing constitutional violations."  <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S 61, 70 (2001) (emphasis added).  "[T]he threat of suit against an individual's employer [is] not the kind of deterrence contemplated by <u>Bivens</u>."  <u>Id.</u>  Plaintiff has no right of action under <u>Bivens</u> against a private entity, such as Defendant ServiceSource, even if the private entity engages in alleged constitutional violations while acting under color of federal law.  <u>Id.</u>

Further, even if Plaintiff could properly bring a <u>Bivens</u> claim against Defendant, Plaintiff fails to show that Defendant acted in any way that violated his constitutional rights.  Plaintiff merely claims that his Fourth Amendment rights were violated by Sergeant Tucker, who is not an employee of Defendant or a party to this case.  Plaintiff then contends that he was terminated as a result of such constituional violation.  Plaintiff has no constitutional right to employment, especially considering he signed a contract that designated him as an "at-will" employee.  Accordingly, Plaintiff's Fourth Amendment claim against Defendant lacks merit and it is RECOMMENDED that the claim be DISMISSED.

**2.      Plaintiff's Due Process Claim**

In Count Two of the complaint, Plaintiff contends that Defendant violated his due process rights "by terminating Plaintiff without reasonable notice, by demanding Plaintiff's

signature in camera, by allowing for the termination of Plaintiff (sic) health care coverage and by failing to report and account for Plaintiff's wages." (Compl. at 6.) The Due Process Clause applies when *government action* deprives an individual of a legitimate liberty or property interest. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972). Plaintiff was employed by a private, rather than a government, entity. Therefore the Due Process Clause does not apply to his employment, because it only "applies to acts of the states, [and] not to acts of private persons or entities." Rendell-Baker v. Kohn, 457 U.S. 830, 837-38 (1982) (citations omitted). Even if Defendant were considered to be a public employer, Plaintiff's due process claim would still fail because Plaintiff was an at-will employee. "[E]mployment at will is not 'property' for purposes of the Due Process Clause." Haddle v. Garrison, 525 U.S. 121, 125-26 (1998) (citing Bishop v. Wood, 426 U.S. 341, 345-47 (1976) (applying this reasoning to an at-will public employee)). Accordingly, it is RECOMMENDED that Plaintiff's claim under the Due Process Clause be DISMISSED.

**3.      Plaintiff's Remaining Claim**

In Count Four of the complaint, Plaintiff alleges bias and falsification of evidence on the part of the United States Department of Labor ("USDL"), a previous defendant in this case. On October 22, 2007, the Court granted Plaintiff's motion to withdraw all claims against the USDL. Since the USDL is no longer a party to the action, it is RECOMMENDED that Plaintiff's Count Four be DISMISSED.

## VII. <u>Conclusion</u>

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for joinder (docket entry no. 44) be DENIED, and Defendant's Motion for Summary Judgment (docket entry no. 39) be GRANTED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

### NOTICE TO PARTIES

**Notice is hereby given to the parties of the provisions of 28 U.S.C. 636(b)(1)(C): Within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by the rules of court. Failure to timely file written objections to these proposed findings and recommendations within ten (10) days may waive appellate review.**

_____/s/_____

Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Date:  2/11/08

19